## THOMPSON, *Adm'r*, *v.* CARROLL.

When the residence of a defendant, whose property is attached, is in this State, but unknown to the officer serving the writ, notice of the pendency of the suit may properly be given by publication in some newspaper, under an order of court.

Such notice may be ordered and published at any time during the pendency of the suit.

Where proceedings rest upon the provisions of a statute, those provisions must be strictly complied with, or the proceedings will be erroneous.

Where a trustee discloses indebtedness upon negotiable promissory notes made and payable in this State, before he can legally be made chargeable, notice must be served on claimants of the notes, if known; or, if unknown, published in some newspaper, to any and all persons interested therein to appear and assert their right thereto.

A judgment charging such trustee, without such notice having been served or published, is clearly erroneous and voidable.

ERROR, brought by the plaintiff as administrator of Charles Thompson, late of Carroll, deceased, to recover judgment of the Court of Common Pleas for this county, rendered November term, 1852, charging the said Charles Thompson, as trustee of one Herbert T. Sturtevant, for the amount of debt and costs recovered by the defendants in error at that term, in a suit brought by them against one Richard Lane and said Sturtevant, as principals, and said Charles Thompson as trustee. The original suit was commenced and entered November term, 1847, of said Court of Common Pleas, the writ having been served only upon Lane as principal, and Thompson as trustee. The action was continued from term to term until November term, 1848, when said Thompson disclosed that Sturtevant held four negotiable promissory notes, for $75 each, against him, all payable in this State, and dated in December, 1845; the first payable in three, the second in four, the third in five, and the fourth in six years from date, with interest; that all the notes were then supposed to be in the possession of Sturtevant and owned by him, and that nothing had been paid upon the notes except twenty-five dollars indorsed upon the first of the series, in March, 1847. The action was thereupon continued from term to term, until the May term,

1851, when an order of notice in the usual form was issued to Sturtevant of the pendency of the suit, and published in the Coös Democrat. At the November term, 1851, the action was continued until the May term, 1852, and an order of notice issued to Sturtevant to appear at that term, and answer on oath all interrogatories respecting the possession, transfer, or other disposition of the notes mentioned in the trustee's disclosure. This notice was served upon Sturtevant personally, by delivery thereof to him on the 17th day of April, A. D. 1852. At the May term, 1852, Sturtevant did not appear, and the action was continued without further proceedings until November term, 1852, when judgment was rendered against the principal defendants for $156.20 debt, and costs taxed at $59.94, making in all the sum of $216.14. Costs of the trustee were at the same time taxed at $44.25, and thereupon an execution issued against the trustee, commanding the officer first to satisfy to said Thompson his own costs, and then the debt and costs of the plaintiffs, from the rights and credits of Sturtevant, in the hands of said Thompson, as trustee. Upon this execution Thompson acknowledged the receipt of his costs, and the plaintiffs of the amount of their debt and costs, January 22, 1853, and the execution was thereupon returned satisfied.

It appears by the record of the judgment, that Lane was defaulted November term, 1847, and Sturtevant at the November term, 1851. Sturtevant was described in the original writ as "formerly of Carroll, residence then unknown," and the officer returned upon the writ that he had made no service upon him, "his residence being unknown to him."

The present action was commenced November 29, 1855, by suing out a *scire facias* in the usual form, returnable at the December term, 1855, containing a recital of the assignment of errors, and an order to the clerk of the Court of Common Pleas to produce the record of the proceedings in the former suit, at that term. This was duly served upon the defendants and the clerk of the Common Pleas, December 1, 1855, by copies. At the December term, 1855, after a motion by the defendants in

error to dismiss the action, because no formal writ of error had been sued out and filed, leave was granted the plaintiff in error to file such writ then as of the date of the *scire facias*, which was accordingly done.

The errors assigned were in substance :

1. That said Sturtevant, being an inhabitant and resident of this State at the time of the entire proceedings in the original suit, no legal service or notice of the same was ever made upon him, so that judgment could properly be taken against the plaintiff in error's intestate as his trustee.

2. That no notice was ordered to be given to any person, or published in any paper, for the information of any one who might claim an interest in the notes disclosed, to come into court and assert their claim, and no notice was given so that judgment could properly be rendered against the plaintiff in error's intestate, as trustee in the original suit.

No pleas were filed in the action.

· *B. F. Whidden* and *J. W. & G. C. Williams*, for the plaintiff.

*Burns & Fletcher*, for the defendants.

FOWLER, J. At the first term of its pendency, motion was made to dismiss this action, because a formal writ of error had not been first read out and filed. Thereupon the plaintiff asked and obtained leave to file such writ as of the date of the original process, and all objection for that cause was thus obviated. There was undoubtedly a want of regularity in the proceedings as they stood at the commencement of the firstterm ; but as this , has since been corrected, and there were circumstances rendering the actual filing of the writ at the institution of the proceedings almost impossible, we think the plaintiff should not suffer by the imposition of terms for the amendment, as we can conceive of no particular inconvenience to which the defendants were subject by the neglect to file it seasonably.

Two errors are assigned as having occurred in the proceeding

whereon the original judgment was rendered : *first*, the want of proper service upon, or notice to Sturtevant, the principal defendant, for whom the plaintiff in error's intestate was charged as trustee ; *secondly*, the want of notice of any kind in the original suit to third persons, who might be interested in the notes disclosed, to come in and assert their claims thereto.

The first error assigned does not seem to exist. Sturtevant was described in the writ as " formerly of Carroll, residence then unknown." The officer returned that he made no service upon him, for the reason that " his residence was unknown to him." Subsequently, although not until after several terms of court had passed, a notice to Sturtevant was ordered to be published in the Coös Democrat newspaper, which order was complied with. This was sufficient. The statute expressly provides that where the goods or estate in this State, of a defendant whose residence is unknown to the officer, shall be attached upon the writ, the court may order the action to be continued, and notice to be given of the pendency thereof by publication in some newspaper printed in the State, the last publication thereof to be at least thirty days before the next term of court, &c. Rev. Stat., chap. 186, sec. 5, (Comp. Stat., 480.) These provisions were carefully and strictly followed in giving notice to Sturtevant, and we are not aware of any objection that can properly be urged against it. That it was not ordered or given until after the lapse of several terms, does not seem material, as there is nothing in the statute showing why it may not be given at any time during the pendency of the action. In the case before us, there was a reason why it should not have been given until after the disclosure of the trustee. He was summoned as the trustee of both or either of the principal defendants, and if he had had property, rights or credits of Lane only in his possession, as Lane had been summoned, no notice to Sturtevant would have been necessary. As it proved that he had rights and credits of Sturtevant alone in his hands, it became necessary to notify Sturtevant, and that was properly done.

The second error assigned is more formidable, and entirely

fatal to the regularity and validity of the proceedings in the former suit.  By the 18th section of the 208th chapter of the Revised Statutes, it is provided that " when any trustee shall disclose his indebtedness to the principal defendant upon a negotiable promissory note, payable in this State, the court may make a rule requiring such debtor to appear and answer on oath all interrogatories respecting the possession, transfer or other disposition of such note, and a rule or order of notice to be served on any individual, or published in some newspaper, for the information of any person who may claim an interest in said note, so that such person may appear and show that the same was transferred to ·him in good faith, and for an adequate consideration, before the service of such trustee process," &c.  By the 20th section of the same chapter, " If any such debtor shall refuse to appear upon such order of court, he may be arrested and brought into court upon a *capias,* and fined not exceeding fifty dollars, and if he shall refuse to answer may be proceeded against as for contempt of court."

The design of these provisions, and those connected therewith, seems to be to provide a summary mode of obtaining the testimony of the principal defendant as a witness in regard to the. disposition of the note, where deemed advisable, and to secure notice to third persons who may be interested in the note.  The true construction of the 18th section is, that whenever a trustee discloses indebtedness by a negotiable note, the court in their discretion may order the principal defendant to appear and testify ; but shall cause to be served on the claimants, if known, or to be published, if unknown, a notice to any and all persons who may claim an interest in the note, to appear and assert their right to it ; and if such notice be not served or published, no valid judgment can be rendered charging the trustee.  *Horn* v. *Thompson,* 11 Foster 573.

In the original suit no such notice was ordered to the claimants of the notes disclosed by the plaintiff in error's intestate ; in other words, the provisions of the statute essential to give the court jurisdiction in rendering a valid judgment against the

trustee, under the circumstances of the case, were not complied with; and consequently there was no authority to render a valid judgment against him upon his disclosure. Where the proceedings depend on the provisions of a statute, those provisions must be strictly complied with, or the proceedings are erroneous and voidable. *Eaton* v. *Badger*, 33 N. H. 228; *Carlton* v. *Insurance Company*, 35 N. H. 162. But the questions arising under this branch of the case were so fully considered and discussed in *Horn* v. *Thompson*, before referred to, that it is unnecessary to pursue the subject further.

As the former judgment was clearly erroneous, it must be reversed, a writ of restitution be awarded the plaintiff in error, to recover of the defendants what his intestate lost by the former judgment, and interest thereon from the time of its payment, with costs of this proceeding in error; and as this court is authorized to render the same judgment here which should have been rendered in the court below, and as the judgment there should have been that the plaintiff in error's intestate be discharged with costs, the plaintiff in error must also have judgment for the trustee's costs, as taxed in the Common Pleas at $44.25.                    *Judgment reversed.*